UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXIMUM QUALITY FOODS, INC.,<br><br>                    Plaintiffs,<br><br>v.<br><br>JOSEPH DIMARIA & WILLOW PROVISIONS, INC.,<br><br>                    Defendants. | Civil Action No.: 14-6546 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of the application of Plaintiff Maximum Quality Foods, Inc. ("Plaintiff")'s Order to Show Cause pursuant to Federal Rule of Civil Procedure 65 and Local Rule of Civil Procedure 65.1 as to why Defendants Joseph DiMaria ("DiMaria") and Willow Provisions Inc. ("Willow") (Collectively "Defendants") should not be temporarily and preliminarily enjoined from, *inter alia,* using or disclosing confidential and proprietary information and/or trade secrets of Plaintiff. The Court has considered the submissions of both parties in support and in opposition to the present application, as well as the arguments presented by the parties at oral argument held on November 24, 2014. Based on the foregoing reasons, Plaintiff's application is denied.

## I. BACKGROUND

Plaintiffs filed the instant Complaint and application for an Order to Show Cause in this matter in the Superior Court of New Jersey, Chancery Division, Union County on October 16, 2014. (ECF No. 1:1-2). Defendants removed this matter to this Court on October 22, 2014. (*Id.*)

Plaintiff is a regional food distribution business located primarily in Linden, New Jersey. (Comp. at ¶ 2). DiMaria is the sole owner and operator of Willow, as well as a former employee of Plaintiff. (*Id.* at ¶ 3). Willow is a regional food distribution business located in New York. (*Id.* at ¶ 4). On August 26, 2014, Plaintiff executed an "Asset Purchase Agreement" ("APA") with DiMaria and Willow in which Plaintiff purchased all customer lists, and all files, records, and documents relating to the customers of Willow, as well as Willow's good will in connection with Defendants' business. (*Id.* at ¶ 7). Plaintiffs also paid Defendants $250,000 and entered into an "Employment Agreement" with DiMaria, pursuant to which he would be a salesman for Plaintiff and aid in the transition of customers. (*Id.*) Both the APA and the Employment Agreement contain non-competition covenants. (*Id.*)

Plaintiff alleges that DiMaria intentionally disregarded the APA and Employment agreement by continuing to service, through Willow, the very same customers Plaintiff acquired through the APA. (*Id.* at ¶¶ 8-10). DiMaria diverted product sales from Plaintiff to Willow, collected revenues related to such sales without remitting them to Plaintiff, and serviced said customers by purchasing products from vendors and providing deliveries to the customers through Willow. (*Id.*) When Plaintiff reached out to these customers regarding their pending or anticipated orders, Plaintiff was informed that the customers already received their products and no longer needed delivery from Plaintiff. (*Id.* at ¶ 11). Plaintiff contends that when Plaintiff's owner and president Gary Roccaro confronted DiMaria regarding his alleged breach, DiMaria admitted to servicing the customers through Willow. (*Id.*)

On October 12, 2014, Plaintiff reached out to thirty six (36) customers whose sales relationships were acquired by Plaintiff through the APA, for Monday orders. (*Id.* at 12). Many of those customers informed Plaintiff that they would call DiMaria directly or that DiMaria

would call them directly for an order, thereby circumventing Plaintiff. (*Id.*) Out of the thirty six customer who normally purchase products weekly on Sunday, Plaintiff only received three (3) orders, two of which were returned when the customers informed Plaintiff that DiMaria had already delivered the products. (*Id*). Plaintiffs also allege that on September 24, 2014, DiMaria improperly retained and has continued to use the customer list, which Plaintiff acquired from Defendants as part of the customer information and records listed in the APA. (*Id.* at ¶ 53). On October 17, 2014, DiMaria received a letter from Plaintiff terminating his employment. (DiMaria Cert. ¶ 29).

On October 31, 2014, this Court granted Plaintiff's application for temporary restraints, requiring Defendants to:

1. Return all of Plaintiff's proprietary information immediately, and any information derived therefrom, including all copies thereof whether in hard copy, electronic form or computer readable form; and

2. Preserve all documents and other evidence, including files, data, or communications in electronic form.

(ECF No. 6 at 3).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 permits District Courts to grant temporary restraining orders. Fed.R.Civ.P. 65(b). Injunctive relief is an " 'extraordinary remedy' and 'should be granted only in limited circumstances.' " *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)). A court may grant an injunction only if a party shows: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that

granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms.*, 369 F.3d at 708. A party must produce sufficient evidence of all four factors—and a district court should weigh all four—prior to granting injunctive relief. *Winback*, 42 F.3d at 1427. However, "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Id.* at 1427, n. 8.

### III. DISCUSSION

In this case, the Court need only analyze the second factor of the preliminary injunction analysis, as Plaintiff has failed to show that it will suffer irreparable harm as a result of Defendant's alleged breach of the APA. In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm. *See e.g., Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982); *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 356 and n. 9 (3d Cir.1980).

Plaintiff argues that because the APA specifically acknowledges that a breach of the restrictive covenants will cause irreparable harm, the element of irreparable harm is met. Moreover, Plaintiff contends that because DiMaria is using his previous customer relationships to continue selling to the customers instead of transitioning them to Plaintiff, he has caused Plaintiff irreparable harm. Finally, Plaintiff cites case law for the proposition that by exploiting the sensitive and confidential information, DiMaria is causing irreparable harm. Defendants argue that Plaintiff has failed to demonstrate that Plaintiff has caused irreparable harm because Plaintiff fails to establish that any of its alleged damages cannot be compensated via monetary reward. This Court agrees with Defendants.

As an initial matter, the Court rejects the contention that the parties have established irreparable harm by agreement. Paragraph 6.16 of the APA states, "the parties agree that irreparable damage would occur in the event any provision of this agreement is not performed in accordance with the terms…" Plaintiff argues that this language is sufficient to establish irreparable harm, relying on *Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*, 219 N.J. Super. 158, 163, 530 A.2d 31, 33 (App. Div. 1987). Although this case makes mention of an employee signing a similar agreement with a similar provision, the Court only emphasizes that the employee in that case understood that there would be no way to determine how much damage his disclosure of trade secrets involving envelope adhesive would cause. Nowhere does the Court state that parties may establish irreparable harm through contract.

Moreover, this Court has stated that "[a] contractual provision simply cannot act as a substitute for a finding by this Court that determines whether a preliminary injunction is proper." *Laidlaw, Inc. v. Student Transp. of America, Inc.*, 20 F.Supp.2d 727, 758 (D.N.J.1998). As such, while the Court does take the language of the Non–Competition Agreement into consideration as part of its analysis of irreparable harm, it rejects the contention that such language may substitute for the preliminary injunction analysis to be made by this Court.

The Court now turns to Plaintiff's second argument for irreparable harm: the loss of its customer base. Plaintiff cites case law for the proposition that by exploiting the sensitive and confidential information, DiMaria is causing irreparable harm. Each of the cases referenced by Plaintiff, however, involved either the loss of trade secrets, or the infringement of a plaintiff's trademark, not a customer base and/or list. *See National Starch,* 530 A.2d at 33 ("Here, we are satisfied that the record adequately supports the reasonableness of a preliminary determination by the Chancery judge that [the defendant] knew *trade secrets* of [the plaintiff], and that under

the circumstances there was sufficient likelihood of inevitable disclosure")(emphasis added); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (Reversing the District Court's denial of a preliminary injunction based upon *trademark infringement* because "potential damage to ... reputation or goodwill or likely confusion between parties' marks" is irreparable injury.")(Emphasis added).

This District has, however, addressed claims of irreparable harm that are factually similar to those made by Plaintiff. In *Apollo Technologies v. Centrosphere Industrial*, the district court found that irreparable harm had not been established where the defendant's breach resulted in the loss of *existing contracts* and *potential subsequent contracts*. 805 F.Supp. at 1206–11. (Emphasis added). The court concluded that such losses were readily compensable by monetary damages, noting that such damages could be computed based on either the plaintiff's proposed contract amount or the price received by the contract winner. *Id*. at 1209. The court further noted that any loss from potential contracts was "entirely speculative." *Id*. Plaintiff's claims of irreparable harm fail for similar reasons.

Plaintiff primarily alleges loss of business due to Plaintiff's interference with its contracts with existing customers. The value of the business lost is thus readily ascertainable through discovery should this matter reach that stage of litigation. Moreover, Defendant has complied with the Court's Order and returned the confidential information at issue to Plaintiff. (DiMaria Cert. ¶ 42). Without the confidential information at issue in his possession, the Court finds that Plaintiff has failed to demonstrate that Plaintiff has caused irreparable harm that cannot be remedied monetarily. All of the required elements for a preliminary injunction to be issued by this Court have not been satisfied. Therefore, Plaintiff's application is denied.

## IV. CONCLUSION

For the reasons herein expressed, Plaintiff's application is denied.

An appropriate Order accompanies this Opinion.

DATE: December 10, 2014

Jose L. Linares
United States District Judge