<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXIMUM QUALITY FOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOSSEPH DIMARIA, AND WILLOW PROVISIONS, INC., <br><br> Defendants. | Civil Action No. 14-6546 (JLL) (JAD) <br><br><br> REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS |

<u>JOSEPH A. DICKSON, U.S.M.J.</u>

This matter comes before the Court upon Defendants Willow Provisions, Inc.'s ("Willow") and Joseph DiMaria's motion (1) to dismiss all claims against Willow pursuant to Fed. R. Civ. P. 12(b)(2); and (2) to dismiss the third, fourth, fifth, sixth, and seventh counts of Plaintiff's Complaint against all parties pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). (ECF No. 20). While Defendants' motion was pending, Plaintiff withdrew counts three, four, five, six, and seven based on what Plaintiff perceived as "Defendant Willow's prior admissions that there is a valid and enforceable contract." (Pl. Br. In Opp., ECF No. 29, at 5; Pl.'s 3/11/15 Letter, ECF No. 31). In any event, the only remaining causes of action against Defendant Willow are Plaintiff's First Count for breach of contract based on the parties' Asset Purchase Agreement, as well as the Eighth Count seeking an award of counsel fees. (<u>See</u> generally ECF No. 20). The sole issue currently before the

Court, therefore, is whether Defendant Willow is subject to personal jurisdiction in New Jersey.[1] The Hon. Jose L. Linares, U.S.D.J. referred Plaintiff's motion to this Court for a Report and Recommendation. Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument on this issue. For the reasons stated below, and for good cause shown, it is the recommendation of this Court that Defendants' motion to dismiss be **DENIED**.

I.   **BACKGROUND**

    a.   **Factual Background[2]**

The Court limits its discussion to the facts relevant to Defendants' motion. Plaintiff Maximum Quality Foods, Inc. ("MQF") is a regional food distribution business and a New Jersey corporation with its principal place of business located in Linden, New Jersey. (Complaint, ECF No. 3-1, ¶ 2). Gary Roccaro owns and serves as MQF's President. (Roccaro Cert., ECF No. 18-2, ¶ 1). Defendant Willow is a regional food distribution business and a New York corporation with its principle place of business located in Floral Park, New York. (Compl., ECF No. 3-1, ¶ 4). Defendant Joseph DiMaria ("DiMaria") is a New York resident, and the sole owner and operator of Willow. (Id. ¶ 3). As explained below, in August 2014 DiMaria became an employee of MQF. (Id. ¶ 7).

Since 2008, Defendant DiMaria operated his food distribution business through Willow. (DiMaria Cert., ECF No. 20-1, ¶ 4). DiMaria asserts that Willow (i) never maintained an office in New Jersey; (ii) all of Willow's customers and sales have been in New York; and (iii) Willow

---

[1] Plaintiff asserts its Second Count, claiming breach of an employment agreement, solely against Defendant DiMaria. Defendant DiMaria does seek dismissal of the remaining causes of action, and does not challenge the Court's ability to exercise personal jurisdiction over him in this matter.

[2] The following factual information is either based on the allegations set forth in Plaintiffs' Complaint (which much be taken as true for the purposes of this motion), Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004), or is not otherwise in legitimate dispute.

never sold any products in New Jersey. (Id.). MQF represents that Defendants were customers of MQF for approximately two (2) years prior to MQF acquiring Willow's assets. (Roccaro Cert., ECF No. 18-2, ¶ 2).

The parties' relationship, to the extent it is at issue in the context of this motion, was dictated by the terms of a written contract. Specifically, on August 26, 2014, MQF executed an Asset Purchase Agreement with DiMaria and Willow through which MQF purchased all customer lists, all files, as well as records and documents relating to the Willow's customers. (Compl., ECF No. 3-1, ¶ 7). Furthermore, MQF paid Defendants two hundred and fifty thousand dollars ($250,000) and entered into an Employment Agreement with DiMaria, Willow's sole owner, pursuant to which DiMaria would become a salesman for MQF and help facilitate the transition of customers from Willow to MQF. (Id.).³

The Asset Purchase Agreement and Employment Agreement contained non-compete and non-solicitation provisions. (Id.). Plaintiff contends that Defendants disregarded their contractual obligations, and almost immediately after those contracts were executed, breached the restrictive covenants contained therein. (Id. ¶ 8). Specifically, Plaintiff alleges that DiMaria continued servicing, through Willow, the same customers MQF had acquired through the Asset Purchase Agreement, diverting product sales from MQF to Willow and collecting the revenues related to such sales without remitting them to MQF. (Id. ¶ 9).

For instance, MQF claims that "DiMaria continued servicing through Willow the very same customers MQF had acquired through the 'Asset Purchase Agreement,' diverting product

---

³ Defendants entered into two separate contracts with MQF, an "Asset Purchase Agreement" and an "Employment Agreement". Defendant DiMaria's alleged breach of the Employment Agreement, which serves as the basis serves as the basis for Plaintiff's Second Count, is not at issue in this motion to dismiss. The Court refers to the Employment Agreement for contextual purposes only.

3

sales from MQF to Willow and collecting the revenues related to such sales without remitting them to MQF." (Id.). Plaintiff further alleges that Defendant DiMaria admitted to Gary Roccaro, MQF's owner, that DiMaria had been "servicing through Willow" the very customers that MQF acquired under the Asset Purchase Agreement. (Id. ¶ 11).

Plaintiff asserts numerous causes of action against Defendants, alleging wrongdoing in connection with the parties' business dealings. (See generally id.). Plaintiff contends that as a result of the Defendants' conduct, including alleged breaches of actual and implied contractual agreements, unfair competition, fraudulent representations, tortious interference with contract, conversion, and unjust enrichment, (id.), Plaintiff has suffered both monetary and reputational damages. (Id.).

b. **Procedural History**

On October 15, 2014, Plaintiff filed a Complaint in the Superior Court of New Jersey, Union Vicinage. (Compl., ECF No. 3-1). Plaintiff alleged eight (8) separate causes of action against Defendants.[4] (Compl., ECF No. 3-1, at 5 - 12). Specifically, Plaintiff contended that Defendants breached two written agreements – (1) an Asset Purchase Agreement between Plaintiff and Willow (First Count); and (2) an Employment Agreement between Plaintiff and DiMaria (Second Count). In addition to those two distinct breach of contract claims, the Plaintiff alleged six (6) additional tort and quasi-contractual causes of action: unfair competition against Defendants DiMaria and Willow (Third Count); fraud against Defendants DiMaria and Willow (Fourth Count); tortious interference with contract – Employment Agreement – against Defendant Willow (Fifth Count); conversion against Defendants DiMaria and Willow (Sixth Count); unjust

---

[4] As noted above, Plaintiff withdrew counts three, four, five, six, and seven based on what Plaintiff characterized as Defendants' prior admissions that the parties have a valid and enforceable contract. (Pl. Br. In Opp., ECF No. 29, at 5) (Pl. Letter, ECF No. 31).

enrichment against Defendants DiMaria and Willow (Seventh Count); and a separate count seeking an award of counsel fees against DiMaria and Willow (Eighth Count). (Id.).

On October 22, 2014, Defendant removed the action to this Court. (Not. of Removal, ECF No. 1). Defendants filed their motion to dismiss on November 20, 2014. (ECF No. 20). As noted above, while Defendants' motion was pending, Plaintiff withdrew Counts Three, Four, Five, Six and Seven, based on what Plaintiff characterized as Defendants' prior admissions that there is a valid and enforceable contract between the parties. (Pl. Br. In Opp., ECF No. 29, at 5; Pl.'s 3/11/15 Letter, ECF No. 31). At this point, the only remaining causes of action against Defendant Willow are the First Count for breach of contract based on the "Asset Purchase Agreement," as well as the Eighth Count seeking an award of counsel fees. (Id.).

Defendant Willow contends that Plaintiff has failed to submit facts establishing that Willow made sufficient jurisdictional contacts in connection with its alleged breach of the "Asset Purchase Agreement," and that the Court should therefore dismiss Plaintiff's claims against Willow for lack of personal jurisdiction. (Def. Br., ECF No. 20-3, at 7-12). Specifically, Willow asserts that any such alleged breaches of the non-compete agreements contained in that Agreement necessarily took place solely in New York and not in New Jersey. (Def. Rep. Br., ECF No. 30, at 4).

For its part, Plaintiff contends that one of the parties' initial meetings regarding their contractual agreements took place in New Jersey. (Roccaro Cert., ECF No. 18-2, ¶ 3). Specifically, on June 18, 2014, DiMaria, acting on behalf of Willow, came to Plaintiff's warehouse in Linden, New Jersey for the purpose of discussing MQF's purchase of Defendant Willow's assets. (Id.). Plaintiff acknowledges that, thereafter, certain aspects of subsequent negotiations

5

took place in New York. (Id.). Ultimately, however, Plaintiff represents that all parties signed the "Asset Purchase Agreement" at Plaintiff's warehouse in Linden, New Jersey. (Id.).

Willow also argues that MQF improperly attributes to Willow, DiMaria's individual contacts with New Jersey in his capacity as Plaintiff's employee. (Id. at 4). Specifically, Willow contends that Plaintiff fails to indicate instances where DiMaria, acting on behalf of Willow, traveled to New Jersey; and that Plaintiff fails to indicate instances where DiMaria used Plaintiff's New Jersey warehouse and resources to service customers on behalf of Willow. (Id. at 3-4).

Additionally, Willow contends that Plaintiff's reliance on the New Jersey choice-of-law provision contained within the "Asset Purchase Agreement" fails as a matter of law. (Id. at 4). Specifically, Willow asserts that "the mere fact that the Asset Purchase Agreement contains a New Jersey law provision is insufficient to demonstrate that it intended to be sued in New Jersey." (Id.).

## II. LEGAL STANDARD

### a. Motion to Dismiss Pursuant to Rule 12(b)(2)

Once a Defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (internal citations omitted). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "'prima facie case of personal jurisdiction'", Haffen v. Butler Specialities, Inc. et al., No. 10-cv-2833 (DMC), 2011 U.S. Dist. LEXIS 21581, *7 (D.N.J. March 3, 2011) (quoting Miller Yacht Sales, Inc., 384 F.3d at 97), and the court "is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Metcalfe, 566 F.3d at 330 (internal citations omitted). Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe

6

all reasonable inferences that can be drawn from the papers in the plaintiff's favor." Haffen, 2011 U.S. Dist. LEXIS 21581 at *7 (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d 1067.6 (3d ed. 2002)). The plaintiff, however, retains "'the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction.' These contacts must be shown 'with reasonable particularity.'" Wellness Publ'g v. Barefoot, 128 Fed. App'x 266, 268 (3d Cir. 2005) (brackets and internal citations omitted).

### i. The Legal Boundaries of Personal Jurisdiction

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc., 384 F.3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Id. (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Henry Heide, Inc. v. WRH Prods. Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." Metcalfe, 566 F.3d at 334. General jurisdiction results from, among other things, "systematic and continuous" contact between a non-resident defendant and the forum state. Spuglio v. Cabaret Lounge, 344 F. App'x 724, 725 (3d Cir. 2009). "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" Miller Yacht Sales, Inc., 384 F.3d at 96 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

7

Here, Plaintiff forgoes a "general" jurisdiction argument, and contends only that Defendant Willow is subject to "specific" jurisdiction. (Pl. Br. In Opp., ECF No. 29, at 5). The Court will therefore limit its analysis accordingly.

### ii. Specific Jurisdiction Analysis[5]

Specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." Abel v. Kirbaran, 267 F. App'x 106, 108 (3d Cir. 2008) (internal citations and quotations omitted). Three elements must be met to establish specific jurisdiction. HS Real Co., LLC et al. v. Sher, 526 F. App'x 203, 206 (3d Cir. 2013). First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. Id. Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." Id. (internal citations and quotations omitted). Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). The Court notes that a specific jurisdiction analysis is claim-specific. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by Remick does not necessarily mean that it has personal jurisdiction over that same defendant as to Remick's other claims.").

Here, the only remaining causes of action against Defendant Willow are the First Count for breach of contract based on the "Asset Purchase Agreement," and the Eighth Count seeking an award of counsel fees. (See generally Compl., ECF No. 3-1). As the Eighth Count is wholly

---

[5] The Court takes no position on the underlying merits of Plaintiff's substantive claims. At this juncture, the Court's inquiry is focused solely on whether, taking Plaintiff's allegations as true, it would be appropriate to exercise personal jurisdiction over Defendant Willow.

8

derivative of Plaintiff's other, substantive causes of action, Plaintiff must succeed in establishing a prima facie case of specific jurisdiction with regard to its claim concerning Willow's alleged breach of the Asset Purchase Agreement. The Court must therefore determine whether Willow has made such contacts with this District that it may be said to have purposefully availed itself of the privilege of conducting activities in the forum in connection with that Agreement. If Willow's relevant contacts are sufficient to establish purposeful availment, the Court must then examine whether Plaintiff's claims arise from those contacts.

### A.     Purposeful Availment

When analyzing purposeful availment in breach of contract cases, courts may look to "prior negotiations" and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Control Screening LLC v. Technological Application and Production Company (Tecapro), 687 F.3d 163, 168 (3d Cir. 2012) (quoting Burger King Corp., 471 U.S. at 479).

The United States Court of Appeals for the Third Circuit has held that traveling to the forum state to consult with the other party can constitute purposeful availment, regardless of who solicited the contact. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992). Moreover, physical presence in the forum is no longer determinative in light of modern commercial business arrangements, rather mail and wire communication can constitute purposeful acts when sent into the forum state. Burger King, 471 U.S. at 476 (acknowledging that "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.").

The available record, read in MQF's favor, indicates that Willow, acting through DiMaria, purposefully availed itself of the privilege of conducting activities in New Jersey in multiple respects. First, Plaintiff asserts that DiMaria went to Plaintiff's Linden, New Jersey warehouse on June 18, 2014 for a meeting regarding the parties' proposed business transactions (a "prior negotiation" under the law). (Roccaro Cert., ECF No. 29-2, ¶ 11).[6] Second, Plaintiff asserts and the record reflects that the "Asset Purchase Agreement" was signed at MQF's New Jersey warehouse by both parties on August 26, 2014. (Compl., ECF No. 3-1, ¶ 7) (Roccaro Cert., ECF 18-2, ¶ 3). While the Court notes Willow's contention that DiMaria, acting on Willow's behalf, "signed the contract in New York and then delivered the signed documents to [MQFs] office in New Jersey for countersignature," (DiMaria Cert., ECF 20-1, ¶ 6), the record must be read in MQF's favor. The Court must therefore adopt Plaintiff's position that Defendant Willow, through DiMaria, signed the Asset Purchase Agreement in New Jersey. Third, the record reflects that DiMaria, acting on Willow's behalf, met with MQF personnel to facilitate the transition of Willow's customer's to MQF. (Abreu Cert., ECF No. 18-1, ¶¶ 3-7). That Court considers that fact as proof of "the parties' actual course of dealing." Control Screening LLC, 687 F.3d at 168.

Finally, the parties agreed that the "Asset Purchase Agreement" would be governed by New Jersey law. While that provision, standing alone certainly, does not constitute purposeful availment, the U.S. Supreme Court has acknowledged that "nothing . . . suggests that a choice-of-

---

[6] Plaintiff acknowledges that certain aspects of the parties' negotiation took place in New York. (Id.). Plaintiff also argues in its brief that that DiMaria, acting on Willow's behalf, "engaged in a pattern of telephonic and electronic communication with the MQF office in New Jersey during the negotiation process." (Pl. Opposition Br., ECF No. 29, at 9). While it seems likely that that the parties engaged in negotiations with respect to the Agreement by way of modern communication (i.e., telephone or email), Plaintiff has not identified anything in the record substantiating that contention. The Court cannot, therefore, consider Plaintiff's counsel's unsupported representations on that point.

law provision should be ignored in considering whether defendant purposefully invoked the benefits and protections of the State's laws' for jurisdictional purposes." Burger King, 471 U.S. 462, 482 (1985). As noted above, the United States Court of Appeals for the Third Circuit has directed that courts conducting a purposeful availment analysis in a breach of contract case should consider, among other things, "contemplated future consequences, along with the terms of the contract." Control Screening LLC, 687 F.3d at 168. The Asset Purchase Agreement's choice-of-law provision falls squarely within those categories. When viewed in conjunction with Willow's other New Jersey contacts, Willow's express agreement that any disputes arising in connection with the Asset Purchase Agreement would be resolved in accordance with New Jersey law, certainly agitates in favor of finding purposeful availment.

This Court determines that, taken together, the contacts described above are sufficient to support a determination that Defendant Willow has purposefully availed itself of the privilege of conducting activities in the State of New Jersey.

### B. "Relatedness" Of Defendant's Activities to Plaintiff's Claim

The Court must next determine whether Plaintiff's claim regarding the Asset Purchase Agreement arises out of or relates to the contacts discussed above. The Court finds that it does. In evaluating the "relatedness" requirement with regard to a contract claim, "courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 320 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)). As noted above, it appears that at least some of Willow's relevant contacts with New Jersey concerned the formation (i.e.,

11

negotiation and execution) of the August 2014 "Asset Purchase Agreement."[7] Specifically, Plaintiff contends that Willow, through DiMaria, actually came to New Jersey to negotiate (at least in part) the terms of that Agreement. (Roccaro Cert., ECF 18-2, ¶ 3). Plaintiff also asserts that the parties actually executed the Agreement at Plaintiff's New Jersey warehouse. (Id.) The Court finds that those contacts were certainly "instrumental" in the formation of the parties' "Asset Purchase Agreement", and thus satisfy the "relatedness" test of the specific jurisdiction analysis. In turn, the Court also finds that it would be appropriate for the District Court to exercise specific jurisdiction over Plaintiff's breach of contract claim (i.e., Willow's breach of the "Asset Purchase Agreement") as set forth in the First Count of Plaintiff's Complaint.

### C. The Exercise of Specific Jurisdiction Comports With Traditional Notions of Fair Play and Substantial Justice

Finally, having determined that it would be appropriate to exercise specific jurisdiction over Plaintiff's contract claim, the Court must confirm that doing so would not offend traditional notions of fair play and substantial justice. "In addressing this question, a court may consider 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" Gourmet Video, Inc. v. Alpha Blue Archives, Inc., 08-2158 (MLC), 2008 U.S. Dist. LEXIS 87645, *8 (D.N.J. Oct. 29, 2008) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. N.J. 2004)).

At its heart, the Court's inquiry is focused on whether it would be "reasonable to require the defendant to defend the suit in the forum state." Decker v. Circus Circus Hotel, 49 F. Supp.

---

[7] The Court notes that unlike the activities, described above, concerning the formation of the Asset Purchase Agreement, the actions constituting Defendant Willow's alleged breach of that Agreement appear to have taken place solely in New York.

12

2d 743, 746 (D.N.J. 1999). Moreover, where, as here, a defendant has engaged in forum activities, the "'minimum requirements inherent in the concept of fair play and substantial justice'" will only serve as a basis for defeating jurisdiction in "'rare cases.'" Id. (quoting Asahi Metal Industry Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 116 (1987)).

Here, the District Court's exercise of personal jurisdiction over Willow satisfies the "fair play and substantial justice" requirement. First, any argument that Willow might face a legitimate burden in traveling from New York to New Jersey is tenuous at best. Willow's place of business is located at 536 Cherry Lane in Floral Park, New York, (DiMaria Cert., ECF 20-1, ¶4); which is approximately thirty (30) miles from this Court. That is not an unreasonable distance for Willow to travel. Moreover, the Court notes that DiMaria, the "sole owner and operator of Willow", (and thus the person who would be acting on Willow's behalf in these proceedings), (Compl., ECF No. 1-1, ¶ 3), is also a defendant in his personal capacity and has not challenged the Court's exercise of personal jurisdiction over him. Mr. DiMaria will, therefore, already have to travel to New Jersey in connection with this matter.

Next, Plaintiff contends that Willow committed certain contractual breaches that had the effect of damaging MQF's New Jersey-based business. Specifically, Plaintiff alleges that DiMaria continued servicing, through Willow, the same customers MQF had acquired through the "Asset Purchase Agreement," diverting product sales from MQF to Willow and collecting the revenues related to such sales without remitting them to MQF. (Id. ¶ 9). Plaintiff MQF's claims arise out of those events. New Jersey, therefore, clearly has a strong interest in this matter, given the nature of Plaintiff's claims and Plaintiff's status as a New Jersey entity. Similarly, MQF has an obvious interest in obtaining an efficient resolution of its claims, an interest that would not be served by forcing Plaintiff to either re-file all of its claims in New York or, alternatively, to maintain one

action (against Willow) in New York and another (against DiMaria) in New Jersey. Finally, the Court does not find that the "shared interest of the several States in furthering fundamental substantive social policies'", Gourmet Video, Inc., 2008 U.S. Dist. LEXIS 87645 at *8, is particularly compelling in the context of the parties' private contractual dispute.

Upon consideration of the relevant factors, the Court finds that it would be "reasonable to require [Willow] to defend [this] suit in [New Jersey]." Decker, 49 F. Supp. 2d at 746. In turn, the Court finds that a New Jersey court's exercise of personal jurisdiction over Willow would comport with traditional notions of fair play and substantial justice.

## IV.   CONCLUSION

Based on the foregoing analysis, this Court respectfully recommends that that the District Court deny Defendant's Motion to Dismiss, (ECF No. 20), in its entirety

_____  3/23/15
JOSEPH A. DICKSON, U.S.M.J.


cc.   Honorable Jose L. Linares, U.S.D.J.